MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150

HOWARD I. LANGER
(*Pro Hac Vice* Application To Be Submitted)
hlanger@langergrogan.com
LANGER GROGAN & DIVER, P.C.
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Telephone: (215) 320-5660
Fax: (215) 320-5703

Attorneys for Defendant
Kav LaOved

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| MORDECHAI Y. ORIAN, an individual, and GLOBAL HORIZONS, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>FEDÉRATION INTERNATIONAL DES DROITS DE L'HOMME, corporate form unknown, EURO-MEDITERRANEAN HUMAN RIGHTS NETWORK, corporate form unknown, SIDIKI KABA, an individual, ABDELAZIZ BENNANI, an individual, and KAV LAOVED, an Israeli Corporation, form unknown,<br><br>Defendants. | Case No. CV 11-6904 PSG (FFMx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT KAV LAOVED'S MOTION TO STRIKE OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:  November 14, 2011<br>Time:  1:30 p.m.<br>Place:  Courtroom of the<br>Hon. Philip S. Gutierrez |

1799598v1/012826

1
2

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND ...............................................................2

      A.    Plaintiffs ....................................................................................2

      B.    Defendants .................................................................................5

      C.    Plaintiffs' Allegations ...............................................................6

III.  ARGUMENT ......................................................................................11

      A.    Pursuant to California's Anti-SLAPP Statute, Plaintiffs'
            Complaint Must be Stricken. ...................................................11

            1.    The Anti-SLAPP Statute Applies to Claims that Target the
                  Exercise of Free Speech. ...............................................11

            2.    Plaintiffs' Complaint is Subject to the Anti-SLAPP
                  Statute. ...........................................................................13

            3.    Because Plaintiffs' Complaint is Frivolous, Plaintiffs
                  Cannot Meet Their Burden and Show a Probability of
                  Prevailing on the Merits. ...............................................14

      B.    Plaintiffs' Action Must Be Dismissed on Several Independently
            Sufficient Grounds ..................................................................15

            1.    The Complaint Has Not Been Properly Served. .............15

            2.    The Court Lacks Jurisdiction Over Kav and this Action. .........15

                  a.    There is No Personal Jurisdiction. .....................15

                  b.    This Case Fails to Meet the Requisite Amount in
                        Controversy for Diversity Jurisdiction. .............17

            3.    The Action is Time-Barred .............................................18

            4.    The Complaint Fails to State a Claim for Relief .............19

                  a.    Plaintiffs Fail to State a Claim for Tortious
                        Interference ......................................................19

                  b.    Plaintiffs Fail to State a Claim for Libel .............20

      C.    Plaintiffs Are Libel Proof .......................................................24

i

IV.  AN AWARD OF DEFENDANT'S ATTORNEY'S FEES IS
     MANDATED BY THE ANTI-SLAPP STATUTE ........................................24

V.   CONCLUSION ............................................................................25

1
## <u>TABLE OF AUTHORITIES</u>

2
### CASES

3
*AccuImage  Diagnostics Corp v. Terarecon, Inc.*,
    260 F. Supp. 2d 941 (N.D. Cal. 2003) ............................................ 19

4

*Alberghetti v. Corbis Corp.*,
5
    713 F. Supp. 2d 971 (C.D. Cal. 2010)............................................. 19

6
*Ashcroft v. Iqbal*,
    129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................... 22

7

*Bell Atlantic Corp. v. Twombly*,
8
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................... 22

9
*Berliner Corcoran & Rowle LLP v. Orian*,
    662 F. Supp. 2d 130 (D.D.C. 2009) *aff'd*, 2010 WL 2574139 (D.C.
10
    Cir. June 10, 2010) ................................................................ 4, 5

11
*Bingham v. Blair LLC*,
    2010 WL 2196106 (W.D. Wash. May 27, 2010) ........................................ 16

12

*Braun v. Chronicle Publ.*,
13
    52 Cal. App. 4th 1036, 61 Cal. Rptr. 2d 58 (1997) ........................................ 11

14
*Briggs v. Eden Council*,
    19 Cal. 4th 1106, 81 Cal. Rptr. 2d 471 (1999) ................................................ 12

15

*Brockmeyer v. May*,
16
    383 F.3d 798 (9th Cir. 2004) ................................................................ 15

17
*Cabrera v. Alam*,
    197 Cal. App. 4th 1077, 129 Cal.Rptr.3d 74 (2011).............................. 20, 21

18

*Church of Scientology*,
19
    42 Cal. App. 4th 628 (1996) ................................................................ 15

20
*Circle Four Farms, LLC v. Orian*,
    2007 WL 3462817 (D. Utah Nov. 14, 2007) ........................................ 3

21

*Cohee v. Global Horizons Inc.*,
22
    310 Fed. Appx. 579 (4th Cir. 2009) ........................................................ 3

23
*Copp v. Paxton* (1996) 45 Cal. App. 4th 829, 52 Cal. Rptr. 2d 831 ...................... 21

24
*Data Discount, Inc. v. System Tech. Associates, Inc.*,
    557 F.2d 1280 (9th Cir. 1977)................................................................ 16

25

*DuPont Merck Pharm. v. Superior Court*,
26
    78 Cal. App. 4th 562, 92 Cal. Rptr. 2d 755 (2000)........................................ 14

27
*Equilon Enterprises v. Consume Cause, Inc.*,
    29 Ca1.4th 53 (2002)................................................................ 15

28

*Forcier v. Microsoft Corp.*,
    123 F. Supp. 2d 520 (N.D. Cal. 2000) ........................................................ 19

*Global Horizons v. U.S. Department of Labor*,
    510 F.3d 1054 (9th Cir. 1997) .............................................................. 2, 5

*Global Horizons Incorporated v. Del Monte Fresh Produce, N.A., Inc.*
    392 Fed. Appx. 805 (11th Cir. August 17, 2010) ............................................ 3

*Hawaii Employers' Mutual Insurance Co. v. Global Horizons, Inc.*,
    2008 WL. 1744726 (D. Haw. Apr. 16, 2008) ........................................... 4, 17

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ............................................................... 13

*Kauai Coffee Company v. Global Horizons, Inc.*,
    2011 WL. 740438 (D. Hawaii Feb. 22, 2011) ........................................... 4, 5

*Kav LaOved v. Government of Israel*,
    910 Isr LR 260 (30 March 2006) ............................................................ 7

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001) .................................................................... 25

*Maloney v. Verizon Internet Services, Inc.*,
    2009 WL. 8129871 (C.D. Cal. Oct. 4, 2009) ............................................... 6

*Manufactured Home Communities, Inc. v. County Of San Diego*,
    2011 WL. 3771277 (9th Cir. 2011) .......................................................... 3

*Meridian Sec. Insurance Co. v. Sadowski*,
    441 F.3d 536 (7th Cir. 2006) ............................................................... 17

*Mindys Cosmetics v. Dakar*,
    611 F.3d 590 (9th Cir. 2010) ............................................................... 15

*Navellier v. Sletten*,
    29 Cal. 4th 82, 124 Cal. Rptr. 2d 530 (2002) ....................................... 12, 13

*Northon v. Rule*,
    2011 WL. 135720 (9th Cir.2011) ........................................................... 25

*Nygard v. Uusi -Kerttula*,
    159 Cal. App. 4th 1027, 72 Cal.Rptr.3d 210 (2008) .................................... 13

*Orian v. Commissioner of Internal Revenue*,
    100 T.C.M. (CCH) 356, T.C. Memo 2010-234 (Tax Court, Oct. 25,
    2010) ......................................................................................... 4

*PG&E v. Bear Stearns & Co.*,
    50 Cal. 3d 1118 (1990) .................................................................... 20

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir.1998) ................................................................ 6

*Perez-Farias,*
    2009 WL. 1011180 (E.D. Wash. April 15, 2009) ...........................................3

*Perez-Farias v. Global Horizons,*
    2008 U.S. Dist. LEXIS 118725 (E.D. Wash. July 21, 2008)..............4, 10, 18

*Perez-Farias v. Global Horizons, Inc.,*
    2011 WL. 3605687  (9th Cir. Aug. 17, 2011)....................................................2

*Rasidescu v. Midland Credit Management, Inc.,*
    435 F. Supp. 2d 1090 (S.D. Cal. 2006) .........................................................17

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) .........................................................................16

*Seelig v. Infinity Broadcasting,*
    97 Cal. App. 4th 798, 119 Cal. Rptr. 2d 108 (2002)....................................13

*Shepard v. Miler,*
    2011 WL. 1740603 (E.D. Cal. May 5, 2011)................................................25

*URS Corp. v. Lebanese Co. for Development & Reconstruction of Beirut Central District SAL,*
    512 F. Supp. 2d 199 (D. Del. 2007) .............................................................16

*U.S. Department of Labor v. Global Horizons Manpower, Inc. and Mordechai Orian,*
    No. 2008-TAE-0003 (July 7, 2008) .................................................................5

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.,*
    190 F.3d 963 (9th Cir. 1999).....................................................................1, 13

*United States v. Orian,*
    Cr No. 10-00576..............................................................................................6

*Valley Fruit Orchards, LLC v. Global Horizons Manpower,*
    2011 WL. 1539788 (E.D. Wash. April 22, 2011) ...........................................5

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003).........................................................................1

*Wynberg v. National Enquirer, Inc.,*
    564 F. Supp. 924 (C.D. Cal. 1982)................................................................24

**STATUTES**

28 U.S.C. §1332(a) ...........................................................................................18

Cal. Code Civ. Proc. Code § 340........................................................................18

Cal. Code of Civ. Proc.§425.16.....................................................................1, 11

Cal. Code Civ. Proc. §425.16(b) ............................................................. 1, 12, 13, 14

Cal.Civ. Code § 45 .................................................................................................... 20

Cal. Civ. Code § 3425.3 ........................................................................................... 19

**OTHER AUTHORITIES**

5B Wright & Miller, Fed. Prac. & Proc ............................................................... 16

Wright & Miller, 14AA *Fed. Prac. & Proc.* § 3702.2 (4th ed.) ............................ 17

1

## I.   **INTRODUCTION**

Defendant Kav LaOved ("Kav") is an Israeli human rights organization dedicated to protecting the rights of foreign workers in Israel.  It is one of the three nonprofit organizations that combat human trafficking plaintiffs have sued.[1]  This action for alleged defamation is based on a report on human trafficking published in 2003 issued by the other two organization defendants named in plaintiffs' complaint.  A paragraph in that report described abuses of guest workers in Israel by plaintiffs, Mordechai "Motti" Orian and his company, Global Horizons ("Global").  Because plaintiffs' lawsuit targets the exercise of free speech regarding matters of significant public interest, it is subject to an anti-SLAPP motion under California Code of Civil Procedure §425.16, which California "enacted to allow early dismissal of meritless first amendment cases . . ." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (internal citation omitted). The statute requires claims be stricken at the outset unless a plaintiff presents admissible evidence establishing a "probability" of prevailing on the merits.  Cal. Code Civ. Proc. §425.16(b).[2]  Plaintiffs cannot meet this standard for many reasons.

As demonstrated below, plaintiffs' complaint should be dismissed for several independently sufficient reasons if it is not stricken.  Plaintiffs failed to serve Kav properly.  This Court lacks personal jurisdiction over Kav, which has not had any contacts with California.   Plaintiffs cannot satisfy the amount in controversy requirement for diversity jurisdiction.  The claims arising from a 2003 publication are barred by the one-year statute of limitations.  Plaintiffs' complaint fails to state a claim because it does not allege what is false in the allegedly defamatory

---

[1] Kav LaOved means "Workers' Hotline" in English.

[2] The Ninth Circuit has held that a defendant facing state law claims in federal court "may bring a special motion to strike pursuant to § 425.16(b)."  *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc*., 190 F.3d 963, 972 (9th Cir. 1999).  "If successful, the litigant may be entitled to fees pursuant to § 425.16(c).  If unsuccessful, the litigant remains free to bring a Rule 12 motion to dismiss . . ." *Id*.

1 statements.  Indeed, an array of judicial and administrative opinions establish that

2 plaintiffs are human traffickers (and serial abusers of the judicial process).

3     In short, this lawsuit is nothing more than a scurrilous attempt to stifle the

4 important work done by defendants to expose the abhorrent practice of human

5 trafficking by persons like the plaintiffs.

6 **II.   FACTUAL BACKGROUND**

7     **A.   Plaintiffs**

8     Mordechai Orian ("Orian") and his company, Global, are corrupt labor

9 contractors, colloquially known as human traffickers.   The United States

10 Department of Labor has repeatedly sanctioned them for extensive abuses against

11 guest workers.  In May and July 2006, they were barred for three years from

12 participating in the H-2A visa program for guest workers and required to pay

13 $292,445 in civil penalties and back wages.[3]  On December 17, 2010 they were

14 ordered to pay $522,508 in back pay and fines.[4]  On December 21, 2010, they were

15 fined $199,600 for yet other violations.[5]  On May 19, 2011, they were again barred

16 for three years and fined $194,000.[6]  Last month, the Ninth Circuit ordered damages

17 increased to $1.98 million in a class action brought against Global by abused

18 workers in Washington. *Perez-Farias v. Global Horizons, Inc.* 2011 WL 3605687

---

[3] *Global Horizons v. U.S. Dept. of Labor*, 510 F.3d 1054 (9th Cir. 1997) and *In re Global Horzons,* Settlement Agreement and Consent Finding Case No 2005-TAE-0001 and 2005-TLC-00006 (U.S. Dept. of Labor 5/3/ 2006).  (*See* Exhibit A to the Declaration of Howard I. Langer ("Langer Decl."), dated September 28, 2011.) The Court is requested to take judicial notice of the documents attached to the Langer Decl. pursuant to F.R. Evid. 201(b).

[4] *In re Global Horizons and Orian*, Case No. 2010-TAE-00002 (U.S. Dept of Labor, 12/17/2010) (Langer Decl., Exh. B).

[5] *In re Administrator Wage & Hour, Division, U.S. Dept. of Labor v. Global Horizons Manpower, Inc. and Mordechai Orian*, 2010 DOL Ad. Rev. Bd. LEXIS 117, 30-31 (DOL Ad. Rev. Bd. 2010).

[6] *In re Global Horizons and Orian*, Cases No. 2005-TAE00002 and 00006 (U.S. Dept of Labor, 5/6/2011) (Langer Decl., Exh. C).

(9th Cir. Aug. 17, 2011).  Global had previously "admitted to violating Washington state and federal laws." *Perez-Farias*, 2009 WL 1011180, 6 (E.D. Wash. April 15, 2009).[7]

The complaint alleges that Orian was indicted last year in Hawaii for human trafficking violations,[8] in the largest human trafficking case ever brought in the United States.[9] In April the EEOC sued plaintiffs for major violations related to trafficking. (Langer Decl., Exh. E).

Plaintiffs' corrupt labor practices have been reported extensively in the press and in studies of human trafficking.  *See, e.g., Help Wanted: Hiring, Human Trafficking and Modern-Day Slavery in the Global Economy, Immigrant Workers in US Agriculture: The Role of Labor Brokers in Vulnerability to Forced Labor*, Verite, 2010 (which devotes a chapter to Global);[10] *Bound for America*, Mother Jones, May/June 2010;[11] and *A Story of Modern Slavery in Utah, Thais tricked, trapped and imported here to be slaves*, Deseret News, August 15, 2010.[12]

Plaintiffs have also been the subject of large judgments stemming from their corrupt practices.  *See, e.g., Cohee v. Global Horizons Inc.,* 310 Fed. Appx. 579 (4th Cir. 2009) (affirming $920,000 verdict); *Global Horizons Incorporated v. Del*

---

[7] *See also Circle Four Farms, LLC v. Orian*, 2007 WL 3462817 (D. Utah Nov. 14, 2007)(describing allegations that Global failed to pay its workers.)

[8] A copy of the indictment is attached as Exhibit D to the Langer Decl.

[9] *Feds Charge 6 In Forced Labor Of 400 Thai Workers, Largest Human-Trafficking Case In U.S. History*, The Huffington Post, 9/2/2010 available at http://www.huffingtonpost.com/2010/09/02/us-human-trafficking-thai-forced-labor_n_704290.html.

[10]  Available at,  http://www.verite.org/system/files/images/HELP%20WANTED A%20Verite%CC%81%20Report_Migrant%20Workers%20in%20the%20United%20States.pdf

[11] Available at http://motherjones.com/politics/2010/05/immigration-law--indentured-servitude.

[12] Available at http://www.deseretnews.com/article/700057024/A-story-of-modern-slavery-in-Utah.html?pg=1

1   *Monte Fresh Produce, N.A., Inc.* 392 Fed. Appx. 805 (11th Cir. August 17, 2010)

2   (affirming $1.196 million in attorneys' fees and costs); *Berliner Corcoran & Rowle*

3   *LLP v. Orian,* 662 F. Supp. 2d 130 (D.D.C. 2009) *aff'd,* 2010 WL 2574139 (D.C.

4   Cir. June 10, 2010) (awarding $223,000 in attorneys' fees Orian failed to pay his

5   lawyers); *Hawaii Employers' Mut. Ins. Co. v. Global Horizons, Inc.,*2008 WL

6   1744726 (D. Haw. Apr. 16, 2008) (awarding $550,589.81 in unpaid insurance

7   premiums; default judgment after Global's lawyer withdrew from case); *Kauai*

8   *Coffee Company v. Global Horizons, Inc.* 2011 WL 740438 (D. Hawaii Feb. 22,

9   2011) (default judgment on indemnification claims by farmer forced to defend labor

10   abuse claims regarding Global).

11      Plaintiffs are also the subject of large tax claims for failing to pay taxes.

12   *Orian v. Commissioner of Internal Revenue* 100 T.C.M. (CCH) 356, T.C. Memo

13   2010-234 (Tax Court, Oct. 25, 2010) (affirming over $1.5 million in penalties

14   noting failure to file tax returns for several years); *Perez-Farias v. Global Horizons*,

15   2008 U.S. Dist. LEXIS 118725 (E.D. Wash. July 21, 2008)*, vacated as moot*

16   *following judgment for plaintiffs,* 2011 U.S. Dist. LEXIS 541 (E.D. Wash. Jan. 4,

17   2011) ("Global is subject to a . . . federal tax lien . . . in the neighborhood of

18   $4 million").

19      Many cases describe plaintiffs' abuses of the judicial process: flouting court

20   orders, destruction of evidence, and obstruction through bad faith argument. In

21   *Berliner,* Judge Kollar-Kotelly referred to the "overwhelming evidentiary record

22   and illogical nature of [Orian's] arguments" and the "factual incoherence associated

23   with Defendants' arguments…"  Mem. Op. (D.D.C. August 17, 2009 (Langer

24   Decl., Exh. F at HIL 269).  *Perez-Farias* described Global's "abuse of the judicial

25   process," and recommended default as a sanction.  2008 U.S. Dist. LEXIS 118725

26   at *2.  The Department of Labor Administrative Review Board affirmed entry of

27   judgment as a sanction. *See Dept. of Labor v. Global Horizons Manpower, Inc. and*

28   *Mordechai Orian,* 2010 DOL Ad. Rev. Bd. LEXIS 117, 30-31 (2010) ("Global

acted in bad faith by: repeatedly disobeying court orders; withholding documents from the Administrator's request; willfully failing to provide documents…; obstructing the completion of the deposition …. Global's conduct constitutes willful, contumacious disregard of the discovery process as well as disregard of…warnings and orders."); *see also In re Global Horizons, Inc. and Mordechai Orian,* Case No-TAE-00001, 2005 TLC-00006 (May 6, 2011) (Langer Decl., Exh. C, at HIL 34-35) ("Extraordinary obstruction during the course of discovery plays a role in the disposition of this case. … The Respondents' scorched-earth tactics are neither new nor unique to this case."); *U.S. Department of Labor v. Global Horizons Manpower, Inc. and Mordechai Orian,* No. 2008-TAE-0003 (July 7, 2008) (Langer Decl., Exh. G, at HIL 292) ("there is a long history of Global's bad faith, delay, and negligence in discovery")

In *Perez-Farias*, and other cases judgments were entered when Orian and Global failed to respond to summary judgment motions. *See, e.g.*, *Valley Fruit Orchards, LLC v. Global Horizons Manpower*, 2011 WL 1539788 (E.D. Wash. April 22, 2011); *Kauai Coffee Company, supra; see also Berliner Corcoran & Rowe LLP v. Orian,* 09-7163, 2010 WL 2574139 (D.C. Cir. June 10, 2010) (" The merits of the parties' positions are so clear as to warrant summary action."); *Global Horizons v. U.S. Department of Labor*, 510 F.3d 1054 (9th Cir. 2007) (noting plaintiffs' repeated delays in district court).

**B.** **Defendants**

Kav is a non-governmental non-profit organization located in Israel, committed to protecting disadvantaged workers employed in Israel and the Occupied Territories. In 2009, it received an award from the President of Israel for combating human trafficking. It has no offices in the United States, let alone California, and transacts no business in California. *See* Declaration of Hanna Zohar ("Zohar Decl."), dated September 26, 2011, at ¶¶3-15.

1    The other two organizational defendants are leading human rights

2    organizations headquartered in Denmark and France.  The complaint alleges they

3    are a consortium of over eighty international human rights organizations. (¶¶3-6).

4    **C.    Plaintiffs' Allegations**

5    Plaintiffs allege that they sued the defendants "because the US attorney used

6    the defamatory material in its submission to the District Court in Hawaii upon

7    which the Court based its decision to keep ORIAN in pretrial detention…" (¶ 19).

8    Plaintiffs do not attach the full submission containing the so-called "defamatory

9    material."  The docket shows that it was an exhibit to the Government's "Appeal To

10   The District Judge of The Magistrate Judge's Bench Ruling Authorizing

11   Defendant's Release On Bond." (Langer Decl., Exh. H, Attachment 8 (HIL 376-

12   82))[13]  Even if a claim could arise against third parties from a judge's ruling at a

13   bail hearing, which Kav vigorously disputes, plaintiffs' assertion that the

14   "defamatory" material was something upon which "the Court based its decision to

15   keep ORIAN in pretrial detention…" (¶ 19) is demonstrably false.  Judge Mollway

16   *denied* the Government's appeal and set bail conditions for Orian.  *United States v.*

17   *Orian,* Cr No. 10-00576 SOM, Minute Order (D. Hawaii Oct. 8, 2010) (Langer

18   Decl., Exh. I).

19   The exhibit was pages from a 2003 publication of the Euro-Mediterranean

20   Human Rights Network (EMHRN) and International Federation For Human Rights

21

[13] The Court may rely upon the complete documents referred to in the complaint.
22   *See Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998) ("a district court ruling
23   on a motion to dismiss may consider a document the authenticity of which is not
contested, and upon which the plaintiff's complaint necessarily relies."); *Maloney v.*
24   *Verizon Internet Services, Inc*., 2009 WL 8129871 (C.D. Cal. Oct. 4, 2009) ("the
Ninth Circuit and commentators alike endorse a court's consideration of pertinent
25   documents alleged, yet not included, in a complaint without converting the motion
as one for summary judgment. ...  In addition, the Ninth Circuit has held that, when
26   a "plaintiff's claims are predicated upon a document, the defendant may attach the
document to his Rule 12(b)(6) motion.")  *See also* 2 James Wm. Moore, Moore's
27   Federal Practice § 12.34[2] (3d ed.2008).

28

(FIDH), entitled "Migrant Workers In Israel-A Contemporary Form of Slavery"[14] (The "Migrant Workers study").  Plaintiffs omit from their exhibit the page of the Government exhibit showing the 2003 copyright.[15]

In addition to the Migrant Workers study, the Government attached to its appeal of the bail order: (1) an Auto Track report showing Orian used 26 aliases and 4 social security numbers; (2) an opinion finding Orian guilty of knowingly making fraudulent statements regarding workers that it imported for non-existent jobs; (3) Orian's 2006 debarment from the H-2A program; (4) Magistrate Judge Hutton's report describing Orian's and Global's contumacious behavior; (5) the Department of Labor's action against Orian in 2005; and (6) a judgment based on Orian's mistreatment of workers in Canada.

The sole allegation against Kav is that, "In 2005, FIDH and EMHRN (at the direction of KIBI and Bennani) published defamatory material about plaintiffs Orian and Global obtained from Defendant Kav . . . "(¶10) ; *i.e.,* that Kav provided the other defendants with information when they were researching their report before it was published in 2003. There is no further allegation of any relevant

---

[14] A subsequent unanimous decision of the Israeli Supreme Court held that certain practices discussed in the report represented conditions of servitude and struck down the relevant regulations in a suit brought by Kav. *Kav LaOved v. Government of Israel,* [2006] 910 Isr LR 260 (30 March 2006) available at http://elyon1.court.gov.il/files_eng/ 02/420/045/o28/02045420.o28.pdf.

In his concurring opinion, Vice-President of the Supreme Court Emeritus Cheshin expressly thanked Kav for having brought the matter:

> Indeed, the foreign workers, the weak and vulnerable among us, have had the good fortune that good people [Kav LaOved] have voluntary come to their aid. These are the petitioners before us. By virtue of the merit of these compassionate people, we have been given the good fortune and the merit of protecting the human image of those workers. And we will protect them, the foreign workers, even though they have not asked this of us.

*Id*. at 315.

[15] The complaint incorrectly alleges it was published in 2005 (¶10).

activity by Kav.

The complaint avers that Orian sued Kav for the alleged defamatory statements in Israel in late 2005 and that that case settled.  The complaint in the Israeli action involved a different publication; namely, statements made on Kav's website in 2005. The publication was attached to that complaint.  It reads:

> Israeli manpower agency "Global Manpower" managed by Mordechai (Motti) Orian, was closed down a few years ago by the Labor Ministry due to complaints concerning fraud, non-payment, violence and forced deportation. Following some attempts to re-establish business in Israel, Mr. Orian is now working in the U.S. running an international adoption agency. (*See* Zohar Decl., Exh. J).[16]

Kav removed the language in 2005 solely to avoid the costs of further litigation. There is no allegation that it was ever republished.

The present complaint does not aver that Kav engaged in any communications regarding Orian or Global since 2005, or that it was involved in the alleged 2010 republication.  Rather it states, entirely upon information and belief, that the other defendants, "FIDH, EMHRN . . . republished the defamatory material . . . at the behest of unnamed co-conspirators…"  Complaint ¶ 19

The allegedly defamatory material in the 2003 Migrant Workers study is quoted at paragraph 10 of the complaint:

> On 29 February 1996, 19 Chinese workers employed by the Global Manpower Company were expelled from the country after working for only a few months. Each had paid $5000 in China for the privilege of working in Israel for a two-year period; $3000 of this went straight

---

[16] By the time of Orian's suit in Israel, Kav had removed, after demand from Orian, a more detailed posting. Israel Compl. at ¶ 26  (Zohar Decl., Exh. J).  Kav requests the Court to take judicial notice of the exhibits attached to the Zohar Decl. pursuant to F. R. Evid. 201(b).

into the hands of Global Manpower director Motti Orian.  By the end of February Mr. Orian owed each of the workers between 2-3 months wages. Instead of paying the workers, he sent ten armed guards to surprise the workers in their sleep, beat them and drive them to the airport, where they were forcibly deported. Back in China, these workers demanded the return of their $5000; on this occasion Chinese representatives flew to Israel to negotiate and the Chinese Embassy put the representatives in touch with Kav La'Oved, who arranged a meeting with the Labour Ministry.

The complaint alleges "the material was almost 10 years old when it was published and is false." (¶11).  But as to falsity, plaintiffs admit that they "imported Chinese workers in 1992." (¶12)  The supposed falsehood is that "there was never any government investigation of Global or Orian" and "there was never any lawsuits against the company or Orian arising out of his business activities in Israel…."(¶12).  But the allegedly "defamatory material" does not say anything about any governmental investigation or any lawsuits. Plaintiffs' complaint is not only incoherent, it does not specify <u>any</u> falsehood in the alleged defamatory material.

Solely based on the fact that the Government attached the 2003 Migrant Worker study as one of nine exhibits to its pleading, plaintiffs claim upon information and belief that "between September 3 and September 9, 2010, subsequent to ORIAN's arrest . . ., FIDH, EMHRN . . . republished the defamatory material [*i.e.,* the Migrant Workers study] in its entirety . . . upon information and belief, at the behest of unnamed co-conspirators in the United States . . . ." (¶ 19), who "are presently unknown to Plaintiffs."  (¶ 20)  However, Kav does not fit within this description because it is not present in the United States.  Further, plaintiffs do not expressly allege that Kav is one of the purported co-conspirators.

The allegation, made upon "information and belief" that FIDH and EMRHN republished the report with plaintiffs' full identities is also specious.  The report as posted on the FIDH website remains in the bowdlerized form that plaintiffs allege they demanded to avoid its showing up in an internet search of their names (¶ 17).[17]

Plaintiffs aver that the alleged republication caused Orian to suffer "gross impairment of his good name" (¶ 24).  In totally conclusory fashion, plaintiffs allege damages to Orian of $100 million and damages to Global of $10 million.

However, plaintiffs have conceded in another case that they could not have been damaged at all.  In *In re Global Horizons Inc.,* 2010-TAE-00002 (Dept of Labor, Dec. 17, 2010) (Langer Decl., Exh. B), Judge Berliner noted that Orian and Global represented in a brief filed on August 30, 2010 (*i.e.*, less than a week *before* the alleged defamation took place), that "it [Global] is essentially defunct and without assets." (Langer Decl., Exh. B at HIL 13). In *Perez-Farias,* 2008 U.S. Dist. LEXIS 118725 at *14, Magistrate Judge Hutton had found that Global was "financially insolvent" with millions of dollars in judgments and tax liens pending against it.

In early September 2010, before the alleged republication, Orian's indictment—describing years of abuse of poor Thai workers—was widely publicized.  An internet search of Orian shows hundreds of news reports from the

---

[17]  See http://www.fidh.org/IMG/pdf/il1806a.pdf at 21 which reads: "On 29 February 1996, 19 Chinese workers employed by the Gl**al Man**wer Company were expelled from the country after working for only a few months. Each had paid $5000 in China for the privilege of working in Israel for a two-year period; $3000 of this went straight into the hands of Gl**al Man**wer director "Motti" O.  By the end of February Mr.O…"  It does not appear on the EMRHN website.

Orian and Global concede that the report may have even been available on the internet since 2003.  They aver that based on their prior efforts to muzzle FIDH and EMHRN, "Plaintiffs were *under the impression* that FIDH and EMHRN had taken steps so that 'Motty Orian' and 'Global Horizons' did not show up in Internet search results" (¶ 18) (emphasis added).

1  Los Angeles Times[18] to the Israeli press[19] to the Hindustan Times.[20]  By September
2  9, the Los Angeles Times had published interviews with Thai workers exploited by
3  Orian.[21]  Before the indictment, plaintiffs had been found to have abused workers
4  warranting their debarment from the H-2A visa program. Global had been held
5  liable for $2 million to abused laborers.  In May they were debarred again for
6  further abuses.  It is beyond frivolous for plaintiffs to claim that the 2003 report
7  damaged Orian's "good name."

8      It is hard to imagine a lawsuit that is so lacking in merit as this one.  It should
9  not be permitted to proceed.

10  **III.   ARGUMENT**

11      A.   **Pursuant to California's Anti-SLAPP Statute, Plaintiffs'**
12           **Complaint Must be Stricken.**

13          1.   **The Anti-SLAPP Statute Applies to Claims that Target**
14               **the Exercise of Free Speech.**

15      In 1992, the California Legislature enacted Code of Civil Procedure § 425.16
16  "to nip . . . in the bud" meritless claims that target exercise of free speech. *Braun v.*
17  *Chronicle Publ.,* 52 Cal. App. 4th 1036, 1042, 61 Cal.Rptr.2d 58 (1997).  Under the
18  statute, any "cause of action against a person arising from any act of that person in
19  furtherance of that person's right of . . . free speech . . . , in connection with a public

20

---

21  [18] Federal *grand jury indicts associates of Beverly Hills firm in human-trafficking*
22  *case,* 9/4/2010 available at http://articles.latimes.com/2010/sep/04/local/la-me-
    0904-human-trafficking-20100904

23  [19] *Israeli says not guilty of 'largest human trafficking case in U.S. history,'* Haartez,
24  9/5/2010 available at http://www.haaretz.com/news/national/israeli-says-not-guilty-
    of-largest-human-trafficking-case-in-u-s-history-1.312199.

25  [20]  *$1mn bail ordered in human trafficking case,* 9/9/2010 available at
26  http://www.hindustantimes.com/1mn-bail-ordered-in-human-trafficking-
    case/Article1-597999.aspx.

27  [21]  *Thai workers describe being lured into slavery in U.S.,* available at
    http://articles.latimes.com/2010/sep/09/local/la-me-0909-slave-labor-20100909.

28

1   issue shall be subject to a special motion to strike, unless the court determines that

2   the plaintiff has established that there is a probability that [he] will prevail on the

3   claim."  Cal. Code Civ. Proc. § 425.16(b)(1).

4       In 1997, section 425.16 was amended to make it clear that the statute "shall

5   be construed broadly."  *Id.* at § 425. 16(a).  The California Supreme Court declared

6   that this "broad construction . . . is desirable from the standpoint of judicial

7   efficiency," and "that [a narrow construction] would serve Californians poorly."

8   *Briggs v. Eden Council,* 19 Cal. 4th 1106, 1121-1122, 81 Cal.Rptr.2d 471 (1999).

9       Subsequently, in *Navellier v. Sletten*, 29 Cal. 4th 82, 88, 124 Cal.Rptr.2d 530

10   (2002), the California Supreme Court outlined the two-step process under § 425.16.

11   "First, the court decides whether the defendant has made a threshold showing that

12   the challenged cause of action arises from protected activity."  To make this

13   showing, the defendant must demonstrate that the alleged conduct "underlying the

14   plaintiff's cause [of action] fits one of the categories spelled out . . . in section

15   425.16, subdivision (e)."  *Id*.  Those categories include:

16       (1) any written or oral statement or writing made before a legislative,

17       executive, or judicial proceeding, or any other official proceeding

18       authorized by law; (2) any written or oral statement or writing made in

19       connection with an issue under consideration or review by a ... judicial

20       body, or any other official proceeding authorized by law; (3) any

21       written or oral statement or writing made in ... a public forum in

22       connection with an issue of public interest; (4) or any other conduct in

23       furtherance of the exercise of the constitutional right ... of free speech

24       in connection with a public issue or an issue of public interest.

25   Cal. Code Civ. Proc. § 425.16(e).

26       Second, if the claim arises from protected conduct, the court "must then

27   determine whether the plaintiff has demonstrated a probability of prevailing on the

28   claim."  *Navellier,* 29 Cal. 4th at 88. If the plaintiff cannot meet this burden, then

1    the claim must be stricken.  *Id.*[22]

2         2.    **Plaintiffs' Complaint is Subject to the Anti-SLAPP**

3               **Statute.**

4         "The California Supreme Court has stressed the critical point is whether the

5    plaintiff's cause of action itself was based on an act in furtherance of the

6    defendant's right of petition or free speech." *Id*. In other words, the statute applies if

7    the plaintiff is attacking the defendant on the basis of the defendants' exercise of

8    free speech regarding an issue of public interest. That is the circumstance here.

9         Kav L'Oved is protected under Cal. Code Civ. Proc. § 425.16(e)(4), which

10   applies the statute to any statement made "in connection with . . . an issue of public

11   interest." Cal. Code Civ. Proc. § 425.16(e)(4). This provision has been interpreted

12   broadly, even applying to reality television programs. *Seelig* v. *Infinity*

13   *Broadcasting,* 97 Cal. App. 4th 798, 807-808, 119 Cal.Rptr.2d 108 (2002).

14        An issue of public interest "is any issue in which the public is interested,"

15   *Nygard* v. *Uusi -Kerttula,* 159 Cal. App. 4th 1027, 1042, 72 Cal.Rptr.3d 210 (2008),

16   including, in that case, an article about a Finnish businessman's vacation home in

17   the Bahamas.  "[T]he issue need not be 'significant' to be protected by the anti-

18   SLAPP statute—it is enough that it is one in which the public takes an interest." *Id.*

19   The Ninth Circuit has instructed courts to "construe . . . 'issue of public interest' . . .

20   broadly" to include any "topic of widespread, public interest" or "person . . . in the

21   public eye." *Hilton v. Hallmark Cards*, 599 F.3d 894, 906-07 (9th Cir. 2010).

22        The statements about plaintiffs' human trafficking plainly relate to a matter

23   of public interest.  Indeed, Orian himself has given repeated interviews in the press

24   and on television regarding the subject. *See, e.g.*, "*KITV Exclusive: Mordechai Orian*

25   _____

26   [22] The anti-SLAPP statute applies to state law claims filed in federal court because
     it confers substantive rights and does not "directly collide" with the Federal Rules

27   of Civil Procedure. *United States* v. *Lockheed Missiles* & *Space Co.,* 190 F.3d 963,
     970-73 (9th Cir. 1999).

28

*Claims Conspiracy Against Him*," <u>KITV News Report</u>, (June 17, 2011);[23] "*In an Exclusive Interview, Global Horizon Founder Disputes Trafficking Charges*," <u>Hawaii Reporter</u>, February 8, 2011 ("Orian maintained that his company has been vindicated at every turn for every accusation and that the claims against him are lies.");[24] "*Human Trafficking Defendant Speaks Out, Mordechai Orian Says Government Turned Against Him*," <u>KITV 4 News Report</u>, June 16, 2011 ("'They don't have a case anyway,' Orian said in an interview Friday").[25]   Orian was the subject of stories on National Public Radio as early as 2006.  *See* "*Government Fines Immigrant Labor Company,*" <u>NPR Report</u>, May 23, 2006.[26]

The anti-SLAPP statute was designed for cases like this one.  This lawsuit is a blatant attempt to silence those who speak out against human trafficking.  The statute is especially apt here since Orian has stated in interviews "that his company has been vindicated at every turn for every accusation," when he has twice been debarred and has been fined on numerous occasions by the United States Department of Labor, has a $2 million judgment against him for abusing foreign workers, and has admitted to major violations in state proceedings.

**3.**   <u>Because Plaintiffs' Complaint is Frivolous, Plaintiffs Cannot Meet Their Burden and Show a Probability of Prevailing on the Merits.</u>

Because defendant's conduct falls under the anti-SLAPP statute, the burden shifts to plaintiffs to establish a probability that he will prevail.  *See* Cal. Code Civ. Proc. § 425.16(b)(l).  This burden is substantial.  As the court explained in *DuPont Merck Pharm. v. Superior Court,* 78 Cal. App. 4th 562, 572, 92 Cal.Rptr.2d 755

---

[23] Available at http://www.youtube.com/watch?v=TohcG0hxBik.

[24] Available at http://www.hawaiireporter.com/in-an-exclusive-interview-global-horizon-founder-disputes-trafficking-charges/123.

[25] Available at http://www.kitv.com/r/28266357/detail.html.

[26] Available at http://www.npr.org/templates/story/story.php?storyId=5424680.

(2000), "to satisfy [his] burden under the second prong of the anti-SLAPP statute, it is not sufficient that [the plaintiff's] complaint survive a demurrer" or motion to dismiss. A plaintiff cannot simply rely on the allegations set forth in the complaint, nor can a court accept those allegations. *Church of Scientology,* 42 Cal. App. 4th at 656, *disapproved on other grounds, Equilon Enterprises v. Consume Cause, Inc.,* 29 Ca1.4th 53 (2002). The plaintiff must adduce "competent, admissible evidence" showing that he has a legally sufficient claim, *Mindys Cosmetics v. Dakar,* 611 F.3d 590,599 (9th Cir. 2010) (citations omitted). Here, the plaintiffs, by pleading upon "information and belief," tacitly admit that they lack knowledge of the most basic facts.

For many reasons, plaintiffs cannot meet their burden.

**B.** **Plaintiffs' Action Must Be Dismissed on Several Independently Sufficient Grounds**

**1.** **The Complaint Has Not Been Properly Served.**

Plaintiffs have not properly served Kav. The complaint to Kav was mailed by registered letter to Tel Aviv, Israel by plaintiffs' attorney.[27] This is not adequate service on a foreign entity. In *Brockmeyer v. May*, 383 F.3d 798, 808-09 (9th Cir. 2004), the Ninth Circuit held that if a foreign entity is not served through the Hague Convention, service by mail is only valid if done by the clerk of court or by a form of service approved in advance by the court. The Ninth Circuit vacated a default where these procedures were not followed. *Id*. at 808-09.[28]

**2.** **The Court Lacks Jurisdiction Over Kav and this Action.**

**a.** **There is No Personal Jurisdiction.**

---

[27] The Envelope is attached as Exhibit K to the Zohar Decl.

[28] While this is an independently sufficient grounds for dismissal, plaintiffs may seek to cure their service failings. Kav therefore requests that the Court consider and reach the other grounds for dismissal and to strike the complaint.

Kav has no offices and transacts no business either in California or the United States. (Zohar Decl., ¶¶3-15).[29]  Plaintiffs' complaint avers that Kav is "an Israel-based human rights organization whose purpose is to protect the rights of immigrant laborers in Israel…" (¶5).  It does not aver any activity by Kav in California or the United States.  That is why Orian sued Kav in Israel when he sought to assert similar claims against Kav several years ago (¶11).[30]

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."  *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004).  The Due Process Clause protects a defendant's liberty interest in not being subject to the binding judgments of a forum with which it has established no meaningful contacts.  *Bingham v. Blair LLC,* 2010 WL 2196106 (W.D. Wash. May 27, 2010).  In *Schwarzenegger,* the Ninth Circuit held that an Ohio auto dealer had insufficient contacts with California to warrant jurisdiction over claims brought under California law by Schwarzenegger, a prominent resident of California, for injuries resulting from the dealership's unauthorized use of his image.  Here, like the Ohio auto dealer, Kav was never present in California and has never done business in California or in the United States for that matter.  (Zohar Decl., ¶¶3-15).

The complaint contains boilerplate language alleging that "Defendants have

---

[29]  The motion to dismiss for want of jurisdiction is brought pursuant to Rule 12(b)(2) and the Court may consider matters beyond the pleading on a motion challenging jurisdiction. *See* 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1351 (3d ed.) ("the court may receive and weigh the contents of affidavits and any other relevant matter submitted by the parties to assist it in determining the jurisdictional facts."); *Data Disc, Inc. v. Sys. Tech. Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977); *URS Corp. v. Lebanese Co. for Dev. & Reconstruction of Beirut Cent. Dist. SAL,* 512 F. Supp. 2d 199, 206 (D. Del. 2007).

[30] The complaint filed by plaintiff Orian in the Tel Aviv Yaffo court avers: "And let it be emphasized, that as the goal of the defendant [Kav LaOved] is allegedly to assist workers 'employed in Israel…'"at ¶ 15.  (Emphasis in original.) (Zohar Decl., Exh. J ).

committed tortious acts . . . in this District," but does not specify any of them.  The only acts it specifies occurred in other countries or had effects elsewhere.  The primary allegation, albeit not actionable and demonstrably false, is that the Government submitted the defamatory material to a court in *Hawaii*, which led to Orian's detention in *Hawaii* (¶ 19).  While that allegation would not give rise to jurisdiction in Hawaii either, it underscores the lack of personal jurisdiction over Kav in this Court.

### b.   This Case Fails to Meet the Requisite Amount in Controversy for Diversity Jurisdiction.

When federal jurisdiction is invoked pursuant to diversity of citizenship, the plaintiff must establish that the amount in controversy exceeds the jurisdictional threshold of $75,000.  "The district court is not obliged to accept the plaintiff's allegations regarding subject matter jurisdiction." Wright & Miller, 14AA *Fed. Prac. & Proc.* § 3702.2 (4th ed.).  "A proponent of federal jurisdiction must... prove those jurisdictional facts by a preponderance of the evidence."  *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 543 (7th Cir. 2006).  Because "Plaintiff bears the burden of establishing subject matter jurisdiction, no presumption of truthfulness attaches to the allegations of plaintiff's complaint and the Court must presume it lacks jurisdiction until plaintiff establishes jurisdiction."  *Rasidescu v. Midland Credit Mgmt., Inc.,* 435 F. Supp. 2d 1090, 1094 (S.D. Cal. 2006).

Here, damages of $100 million and $10 million are alleged, when, a week before the tort allegedly occurred in September 2009 ((¶19), plaintiffs represented to an administrative law judge that they were, in effect, destitute.  Judge Berlin states in his Order of December 17, 2010, referring to plaintiffs' submission of August 31, 2010, that "[Global] states that . . . it is essentially defunct and without assets."  *In re Global Horizons Inc. and Mordechai Orian*, *supra* (Langer Decl., Exh. B at HIL 13). *Perez-Farias,* found in 2008, "Global is financially insolvent. Its debts far exceed its assets," and that, "Orian testified that he did not want to [file for

bankruptcy], … since there were no corporate assets remaining for creditors to seize." 2008 U.S. Dist. LEXIS 118725, at *14.  Since plaintiffs were debarred from the H-2A visa program, they cannot claim any future adverse impact from the alleged defamation.

Moreover, Orian's conclusory allegations regarding the purported damage to his "good name" cannot satisfy the jurisdictional threshold because they are not plausible.  Days before the tort was alleged to have occurred, the Department of Justice issued a press release outlining the Government's charges that Orian was engaging in a massive human trafficking scheme.  This was widely disseminated.[31]  A headline in the <u>Los Angeles Times</u> read: "Federal grand jury indicts associates of Beverly Hills firm in human-trafficking case.  In a mind-boggling case, the owner and four employees of Global Horizons Manpower Inc. are indicted on charges of engaging in a conspiracy to coerce the labor of hundreds of Thai nationals."[32]  Before the criminal action, the numerous Department of Labor actions and court decisions had received wide publicity.  It is implausible that the alleged republication could have wrought any cumulative harm to Orian, let alone caused damages in an amount sufficient to meet the jurisdictional threshold under 28 U.S.C. §1332(a).

### 3.      The Action is Time-Barred

Plaintiffs' complaint is time-barred.  The complaint alleges that the "defamatory material" was first published in 2005.  The statute of limitations for libel is one year.  *See* Cal. Civ. Proc. Code § 340.  California has adopted a single publication rule, limiting the time to bring an action measured by the first

---

[31]   *See* http://www.justice.gov/opa/pr/ 2010/September/10-crt-999.html  (United States Department of Justice press release, Sept. 2, 2010).

[32]*See*   http://articles.latimes.com/2010/sep/04/local/la-me-0904-human-trafficking-20100904 (<u>Los Angeles Times</u>, Sept. 4, 2010).

publication.[33]

1  
2  While plaintiffs' counsel failed to attach the pages of the report that showed

3  when it was published, the Government exhibit clearly shows that it was published

4  in 2003. (Langer Decl., Exh. F at HIL 378.) In *Alberghetti v. Corbis Corp.* 713 F.

5  Supp. 2d 971 (C.D. Cal. 2010), the Court cited the extensive law applying § 3425.3

6  to the internet and holding that the statute of limitations begins to run with the first

7  posting. 713 F. Supp. 2d at 976-77. Similarly, "A cause of action for interference

8  with contractual relations is governed by the two-year limitations period of [Cal.

9  Code Civ. Proc.] section 339, subdivision 1." *Forcier v. Microsoft Corp.,* 123 F.

10  Supp. 2d 520, 530 (N.D. Cal. 2000).

11  The only relevant action alleged by Kav occurred in 2005. The Complaint

12  refers to no conduct by Kav after 2005 (¶ 10). However, Kav's conduct—the

13  furnishing of information to the authors of the human rights study—had to have

14  occurred before the study was published in 2003.[34]

15  **4.**    **The Complaint Fails to State a Claim for Relief**

16  **a.**    **Plaintiffs Fail to State a Claim for Tortious**

17  **Interference**

18  In their Third Cause of Action, plaintiffs purport to state a claim for tortious

19  interference with plaintiffs' business relations. A barebones assertion that a party

20  "tortiously interfered" cannot withstand a motion to dismiss. *AccuImage*

21  _____

22  [33] Cal. Civ. Code § 3425.3 reads:

23  No person shall have more than one cause of action for damages for libel or slander
or invasion of privacy or any other founded upon any single publication or
exhibition or utterance, such as any one issue of a newspaper or book or magazine

24  or any one presentation to an audience or any one broadcast over radio or television
or any one exhibition of a motion picture. Recovery in any action shall include all

25  damages for any such tort suffered by the plaintiff in all jurisdictions.

26  [34] As explained above, the Israeli lawsuit is a red herring. It involved a different

27  publication and there is no allegation that the publication at issue in that 2005 case
was ever republished. In any event, those events occurred in 2005 as well.

28

1  *Diagnostics Corp v. Terarecon, Inc.,* 260 F. Supp. 2d 941, 956 (N.D. Cal. 2003).

2  "[T]he elements which a plaintiff must plead to state the cause of action for

3  intentional interference with contractual relations are (1) a valid contract between

4  plaintiff and a third party; (2) defendant's knowledge of this contract; (3)

5  defendant's intentional acts designed to induce a breach or disruption of the

6  contractual relationship; (4) actual breach or disruption of the contractual

7  relationship; and (5) resulting damage." *PG&E v. Bear Stearns & Co.,* 50 Cal. 3d

8  1118, 1126 (1990). None are pleaded here.

9       The elements have not and cannot be pleaded because a week before the

10  alleged tortious conduct, plaintiffs conceded that their business was—and had long

11  been—defunct.   Since they were debarred from engaging in their business,

12  importation of foreign workers, there can be no plausible claim for tortious

13  interference.

14              **b.     Plaintiffs Fail to State a Claim for Libel**

15       The alleged defamation represented privileged speech on a public issue and

16  cannot give rise to a claim for libel.[35]   Moreover, because plaintiffs are public

17  figures or at least limited public figures, as plaintiffs' extensive appearances in the

18  press and television make clear, the burden is even higher.  In *Cabrera v. Alam,* 197

19  Cal.App.4th 1077, 1082, 129 Cal.Rptr.3d 74 (2011), the Court reversed denial of a

20  motion to strike a defamation complaint almost identical to plaintiffs' claims, but

21  involving a more limited public forum and an issue of less important public

22  concern:

23

24  _____

25  [35]  California Civil Code section 45 provides, "Libel is a false and unprivileged
    publication by writing, printing, picture, effigy, or other fixed representation to the
26  eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which
    causes him to be shunned or avoided, or which has a tendency to injure him in his
27  occupation."   The alleged defamation is privileged and does not contain the
    statements plaintiffs aver are false.

28

1   Plaintiff's complaint asserted claims for defamation (slander),
2   intentional interference with contractual obligation, negligent
3   interference with contractual obligation, and unfair business practices.
4   … the gravamen of her defamation claim is that defendant "stated to a
5   room full of residents from Brookhurst Village, that Plaintiff had
6   committed the crime of fraud on the Brookhurst Village Homeowners
7   Association and stolen funds from the Association."

8   *Cabrera,* 197 Cal.App.4th at 1082, 129 Cal.Rptr.4th at 78.

9   The court also held that because the case involved a limited public figure,
10  malice had to be established:

11  "The limited purpose public figure is an individual who voluntarily
12  injects him or herself or is drawn into a specific public controversy,
13  thereby becoming a public figure on a limited range of issues."
14  [citation] *Copp v. Paxton* (1996) 45 Cal.App.4th 829, 845–846, 52
15  Cal.Rptr.2d 831, sets forth the elements that must be present in order
16  to characterize a plaintiff as a limited purpose public figure. First, there
17  must be a public controversy, which means the issue was debated
18  publicly and had foreseeable and substantial ramifications for
19  nonparticipants. (*Id.* at p. 845, 52 Cal.Rptr.2d 831.) Second, the
20  plaintiff must have undertaken some voluntary act through which he or
21  she sought to influence resolution of the public issue. ( *Ibid.*) In this
22  regard, it is sufficient that the plaintiff " 'attempts to thrust himself into
23  the public eye.' " **86 (*Id.* at pp. 845–846, 52 Cal.Rptr.2d 831.)
24  Finally, "'the alleged defamation must have been germane to the
25  plaintiff's participation in the controversy.'"

26  *Cabrera*, 197 Cal.App.4th at 1092, 129 Cal.Rptr.3d at 85-86.

27  Orian is a public figure. His notoriety is reflected in a vast number of news
28  articles. He has undertaken voluntary acts to place himself in the public limelight,

including granting interviews to the press and on television—unusual for a criminal defendant—in which he has falsely denied ever being found to have engaged in any violations of the law and has claimed that the indictment against him is politically motivated by the administration of President Obama.[36]   The claims at issue here clearly involve protected speech precluding a cause of action under California law.

And even if they did not, as discussed above, the complaint does not allege the most basic element of a libel action.  It does not allege any untruth.

The complaint's allegations of libel against Kav also do not plausibly state any cause of action under *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1961, 167 L. Ed. 2d 929 (2007).

Further, under the anti-SLAPP statute, plaintiffs must go far beyond the *Iqbal* standard.  They must demonstrate an actual probability of success on the merits. Since most of their complaint is alleged upon information and belief and plaintiffs thereby concede lack of knowledge, their complaint fails the requisite showing on its face.  They meet neither *Iqbal* nor the anti-SLAPP standard.

Nothing is alleged against Kav other than that it possibly furnished information to researchers later used in a study published in 2003.  But even that inference is implausible.  No basis is alleged for assuming that Kav even provided the alleged defamatory material in 2003.  It was one of over twenty sources whom the authors identified in the study's appendix.[37]  As discussed above, the allegations

---

[36] "*Mordechai Orian says he and his company are victims of a political prosecution, engineered by the Obama administration.*" KITV, June 17, 2011, available at http://www.youtube.com/watch?v=xsqepHv08jM.

[37] Kav LaOved served as an intermediary at the request of the Chinese Embassy in Israel in 1996 on behalf of Chinese workers allegedly abused by Orian's company. It would not deny that fact alleged in the "defamatory material."  It would not concede that it is the source of any of the other information.  While not relevant to the present motion, the "defamatory material" is likely true.  See, http://www.journeyman.tv/?lid=9811&tmpl=transcript (transcript of documentary interviewing Chinese workers in Israel in 1996, regarding employment by, among

1    regarding the lawsuit in Israel are irrelevant except that they make clear that that

2    case dealt with a different publication and there is no allegation here that that 2005

3    publication was ever republished after Kav removed it from its website as part of a

4    settlement.[38]

5        As discussed above, the remaining allegations in the complaint relate to

6    FIDH and EMHRN.   They allege a conspiracy with unknown conspirators, *not*

7    *expressly including Kav,* and a republication based entirely on "information and

8    belief."

9        There is no basis alleged for any such "information and belief."  The location

10   of the posting on the internet is not identified.  As discussed above, the study on the

11   FIDH website remains in the bowdlerized form that plaintiffs allege they

12   demanded.  There is nothing connecting any defendant to any other posting or even

13   establishing the Government obtained the 2003 report from the internet.   Plaintiffs

14   cannot even allege that all postings of the report on the internet in 2003 had been

15   removed.   They may have been there for years.   Plaintiffs admittedly never

16   checked: "Plaintiffs were *under the impression* that FIDH and EMHRN had taken

17   steps so that 'Motty Orian' and 'Global Horizons' did not show up in internet

18   search results and the matter was dropped."  FIDH and EMHRN apparently did as

19   Orian demanded as the FIDH site shows, but they do not control the entire internet.

20   _____

21   (… cont'd)

     others, Orian). http://www.journeyman.tv/?lid=9811&tmpl=transcript

22   [38] It underscores the implausibility of the complaint.  The only allegations regarding

23   Kav's communications with that FIDH and EMHRN would have occurred in 2002
     or 2003 before the Migrant Workers Study was published in 2003.   The Kav

24   LaOved case was conducted in Hebrew in Israel in 2006.  FIDH and EMHRN were
     not parties and there is no allegation that they had anything to do with Kav's

25   posting at issue there.  Yet the complaint alleges that FIDH and EMHRN "knew,
     based on the previous lawsuit in Israel that [the defamatory statements ] were

26   false." ¶ 25.  Not only were FIDH and EMHRN not involved in Israel lawsuit, that
     suit dealt with an entirely different posting.   There is no allegation of Kav's

27   involvement with the alleged 2010 republication.

28

1   There is no basis for the inference that any new posting was made between
2   September 3 and 9, 2010, let alone one to which any defendant was connected.

3       The inference of conspiracy is equally implausible.  The mere fact that the
4   Government attached a page from a 2003 study on human trafficking to an appeal
5   does not create an inference that the authors of the study were engaged in a
6   conspiracy.  Were Judge Hutton and the various Department of Labor ALJs whose
7   documents were exhibits to the same motion also conspirators?  There is no more
8   basis for one inference than for the other.

9       Because the complaint relates to protected speech, does not aver the
10  publication is false, and does not plausibly allege republication in 2010 or connect
11  any defendant with the alleged republication, it should be dismissed.

12      **C.      Plaintiffs Are Libel Proof**

13      The court should, as an alternative holding, find that the plaintiffs are libel
14  proof.  Judge Stephens explained in *Wynberg v. National Enquirer, Inc.* 564 F.
15  Supp. 924, 927 -928 (C.D. Cal. 1982):

16      First Amendment considerations of free press and speech, promoting
17      society's interest in uninhibited, robust, and wide-open discussion,
18      must prevail over an individual's interest in his reputation in such
19      cases. An individual who engages in certain anti-social or criminal
20      behavior and suffers a diminished reputation may be "libel proof" as a
21      matter of law, as it relates to that specific behavior. [extensive
22      citations]

23      Orian and Global have been repeatedly found to have seriously abused
24  foreign workers.  All of this has been widely reported in the world press.  They are
25  libel proof and the case should be dismissed as a matter of law.

26  **IV.    AN  AWARD  OF  DEFENDANT'S  ATTORNEY'S  FEES  IS**
27        **MANDATED BY THE ANTI-SLAPP STATUTE**

28      "Under California's anti-SLAPP statute, 'a prevailing defendant on a special

motion to strike shall be entitled to recover his or her attorney's fees and costs.'" *Manufactured Home Communities, Inc. v. County Of San Diego*, 2011 WL 3771277, *9 (9th Cir. 2011) . "It is well-settled that such an award of fees and costs is mandatory under the statute, *Ketchum v. Moses,* 24 Cal.4th 1122, 1131, 104 Cal.Rptr.2d 377 (2001), and applies to successful anti-SLAPP motions brought in federal court." *Shepard v. Miler*, 2011 WL 1740603, *1 (E.D. Cal. May 5, 2011) (Slip Op.) (citing *Verizon Del., Inc. v. Covad Commc'ns Co.,* 377 F.3d 1081, 1091 (9th Cir.2004)).

The mandatory fee-shifting provision is "to discourage[ ] strategic lawsuits against public participation by imposing the litigation costs on the party seeking to 'chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances' and encourage 'private representation in SLAPP cases.'" *Ketchum,* 24 Cal.4th at 1131, 104 Cal.Rptr.2d at 383 (2001); *see also Northon v. Rule,* 2011 WL 135720 at *2 (9th Cir.2011)

Accordingly, Kav respectfully requests that this Court award it the reasonable value of the attorneys' fees and costs incurred in defending this action.

## V.   **CONCLUSION**

For the foregoing reasons and authorities, Kav respectfully requests that the complaint be stricken under the anti-SLAPP statute or, in the alternative, that this action be dismissed and that Kav be awarded its costs and attorneys' fees incurred in defending this meritless action.

Dated: September 28, 2011          MARC M. SELTZER
                                   SUSMAN GODFREY L.L.P.

                                   HOWARD LANGER
                                   LANGER GROGAN & DIVER, P.C.


                                   By:   */s/ Marc M. Seltzer*
                                        Marc M. Seltzer
                                    Attorneys for Defendant
                                    Kav LaOved